May it please the Court, my name is Brady Mertz, my co-counsel is Rick Klingbeil. Why are you guys splitting time? Are you doing it by issue, or do you both just want to have your day in the sun? What's the deal? We thought it would be best... Are you guys dividing it by issue? No, Your Honor. Then why are you splitting time? We thought it would be more efficient on our part to be able to do it this way. You're welcome to use the time however you want. It's usually not advantageous if you're not going to divide it by issue, but do it however you want. Okay. Go ahead. Thank you, Your Honor. We were hoping to reserve five minutes for rebuttal. This matter involves an appeal from a 12B6 motion to dismiss. The plaintiff has made five claims. After hearing on the issues, these claims were all dismissed, which is a rather harsh result for a case that has barely begun. According to Williams v. Gerber, it's rare that a granting motions to dismiss is appropriate because of its harshness. In Williams, the Court was deciding a 12B6 motion based upon the following information. In that particular case, it deals with a product, which is fruit juice snacks. Packaging, which involved pictures of different fruits suggesting these fruits are contained in the product, and a statement made where the fruit juice snacks was made with fruit juice and other all-natural ingredients. And the Court decided that reasonable consumers should have to look beyond reasonable representations on the front of the box to discover the truth on the small print on the side of the box. And in Williams, the Court noted that the information on the side of the box could follow FDA regulations and still deceive a consumer. This issue is that the supplemental facts on the side of the box should do exactly that. It should supplement what's on the front of the box. It shouldn't take back information. It should not clarify. It shouldn't edit. It shouldn't substitute. It should supplement. And this requires consistency with the front of the box. Counsel, I'm just trying to understand the theory in this case. Yes, Your Honor. There's a product called multigrain Cheerios. Yes, Your Honor. And the front of the box says multigrain Cheerios. And I guess under your theory, a consumer would look at the front of the box and think, what all there is in these Cheerios is multigrain. And then if they flip over the box and see it has corn syrup and salt and other things, would that be actionable? It depends, Your Honor. It depends upon if they're taking away something from the multigrain cereal and saying that there's other things in there other than multigrain, such as some form of a chemical. And so that could be one reason why it would be an actionable claim. So under your theory then, really, you can't have a separate set of ingredients on the back. It all has to be on the front. So when the consumer walks up, it has to be able to see exactly what it is on one side of the box as opposed to flipping it to the other side of the box or to the side of the box. Well, it needs to be consistent in the sense that what they're presenting on the front of the box needs to have the supplemental facts which match what's on the front of the box. But how could it ever, if there's ever one little difference under your theory, multigrain Cheerios, but on the side of the box it lists corn syrup being one of the ingredients, wouldn't that, under your theory, be inconsistent with what's on the front of the box and it doesn't say multigrain corn syrup Cheerios? Well, I think it would depend upon, such as with the Williams case, on what is being presented on the front of the box. And in that particular case, they put information such as pictures of fruit. And they provided, they chose to provide more information on the front of the box other than, in your case, it just says multigrain Cheerios. In that case, it's very limited information. They provide more information on the side of the box. That may be consistent. But if you put multigrain Cheerios on the front of the box and then you put other things that say, you know, pictures of fruit or pictures of certain kinds of grains, and then you put something on the side of the box that says there is no grain in this cereal, that's problematic. It doesn't have to be false. It can be deceptive. It doesn't have to be apples versus oranges. Yes, Your Honor. Good example. It needs to be, and one of the things that's pointed out in the FDA regulations, in this case, in its 101.CFR, 21 CFR 101.105A, which deals with the principal display panel on the front of the product. And what it says is, the principal display panel of a food in package form shall bear a declaration of a net quantity of contents. This shall be expressed in the terms of weight, measure, numerical count, or a combination numerical count and weight or measure. So in this case, in Plaintiff Walter's case, we're actually dealing with a form of a statutory kind of contract based upon the terms using the FDA regs. They determine these regs with this declaration, dealing with the primary display panel, which is on the front of the bottle. The FDA regs determine the information that has to be displayed on the front of the bottle. The supplemental facts, if you go to the Walter's case, says that it has to be consistent. It doesn't mean that they can follow one reg for the front of the bottle and then provide information, supplemental facts, on the back of the bottle and have those both follow the regulations but be inconsistent with each other. You can't just follow the regs and have the supplemental facts actually take something away or make it potentially deceiving. So as examples, I'm going to have some examples here today. This particular bottle, this is Spirulina, and it says here on the bottle 500 milligrams. Well, your client didn't buy that product, right? No, Your Honor. So just, I mean, the only product that's actually an issue, I think, that your client would have standing to pursue a claim about would be the one that he bought. In the pleadings, we've alleged 18 different potential problems. Right, but you have one plaintiff who bought one product? At this point, because we haven't. No, that's how the case comes to us, counsel. We're not here to litigate every single product these people sell. And are any of those products in the record? These products, they're in the pleadings. But they're not actually, there's not photographs of them in the record at this time? There's photographs in the pleadings. Oh, okay. Yeah. Of some of them, which ones? Calcium Chews. Pardon me? The Calcium Chews. In the front. Lettuce Chews. Well, let me just tell you right now that you have seven minutes, so if you want to give your co-counsel five minutes and have two minutes for a bottle, you would need to stop now, or you can plow on, it's up to you. Well, I will plow on with the rest of my argument briefly, Your Honor. I can finish that up in a couple minutes. In this case, argument is that the primary display panel, as written, is likely to mislead an objectionably reasonable consumer. And a reasonably consumer standard, according to the Pearson versus Philip Moore case, is whether that was a misrepresentation is determined based on an objective standard, what a reasonable consumer would understand the representation to be. And so our argument here is that, in this matter, we should at least be left with these claims to pursue to, since it is so early in the case, we have alleged elements and facts within the complaint itself in the second amended complaint that do meet the standard to not be dismissed by 12b-6. All right. So in the second amended complaint, it's excerpt of record number 29, looks like, 29 or 27. If I can read this right. Okay. It's ER 29, so it's page 29. On page 5 of the second amended complaint, there's a picture of the L-Arginine and the calcium chews. So on the front of the calcium chews, it says 1,000 milligrams, 60 soft chews. So if we look at the front of L-Arginine, or it's called LAO, there's 2,000 milligrams that says here on the front of the bottle. It says 300 capsules. So if we just multiply that out, excuse me, if we just multiply that out, that is 600,000 milligrams of material within this bottle. But if you look to the back on the supplemental facts, it actually says serving size two capsules, servings per container 150. So we've immediately gone from 600,000 milligrams to 300,000. You have five minutes, counsel. Thank you. Does your co-counsel want to speak? We were preserving five minutes for rebuttal. Okay. You're going to do rebuttal, I guess. Yes. I don't want to deprive you of the opportunity to at least address the court. Okay. So why don't you stop. Yes. We'll hear from counsel for the defendant. Good morning, Your Honors. Angel Garganta for the Apelli Vitamin Shop Industries. Let me begin by apologizing for my little mishap. Don't worry about that. Let me ask you this. So could you make the serving size basically the whole jar and just have so little of the product in there that you'd say 1,000 milligrams and you'd say 60 tablets and then someone would have to turn the thing over to realize, oh, actually there's only one serving in this thing because there's only 20 milligrams per tablet? Could you do that? I understand, Your Honor, but that wouldn't make sense and it wouldn't comply with FDA regulations. Why not? Because. Why would it not comply any more than what you have done? Well, what we have here, Your Honor, is a situation. This gets perhaps a little factual, but the reason the serving size is two pills is because we're talking about high-density supplements. If you were to put, for example, all the calcium that's in the serving in one calcium chew, you'd be talking about a hell of a chew. It would be essentially a horse pill. All right? But let me address, so just say on the front 500 milligrams. Well, you could do that, but just hang on a second because I just want to make sure I get an answer to the first question I post. So why can't you just say 1,000 milligrams, 60 tablets, but then someone would have to turn it over to realize that actually each tablet contains 20 milligrams and you've got to take practically the whole bottle? Because serving size has a relationship to the amount of a food that is regularly consumed. So you don't usually have a serving size that's, in some cases, it's an entire package. But a consumer doesn't ordinarily consume an entire bottle of pills. Do you understand what I'm saying? So there is a relationship. There's a regulatory and industry relationship. So 5 pills, 10 pills, I mean, you pick the number. It could be 5 or it could be 10. I don't think there's any justification for saying 1,000 milligrams without further explanation. Well, let me address that, if I may, under the Williams case. Yes, sir. I'm looking at page 7 of the second amended complaint, and it has right there a picture from your vitamin shop, minerals, calcium 1,000. And it says per 2 soft gels. And it tells you that there's 100 soft gels. And the calcium to get the 1,000 milligrams is per 2 soft gels. So you do that. The label is not misleading. And there's no question that it can be done. And I'm not here to tell you that that front, the principal display panel could not be clearer. All right? But I don't think that is the legal issue before this court under Williams. If the court looks at Williams, and Williams itself says reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging. Even more so than an ingredient list, the supplement fact panel, Your Honor, and it's not the supplemental fact panel that keeps being referred to. It's the supplement fact panel. It's the facts about the supplement. All right? And the supplement fact panel is the place where you put servings. It's where FDA tells you what servings are. Now, going back to the principal display panel, Your Honor, what we have on the principal display panel. But the supplement display panel, for example, on the calcium chews, doesn't confirm that the 60 capsules have 1,000 milligrams. It's just the opposite. The 60 capsules have 500 milligrams. That's what the supplemental panel says. Actually, it's the supplement panel, Your Honor, not the supplemental panel. Supplement. Yeah. It's a distinction that matters. I know. And it does, it confirms that to get 1,000 milligrams, what you do is you take two pills. That's the serving size. Now, if you look at some of the other cases we've cited, for example. So you could have put in there 100 milligram capsules, 60 of those, and said serving size 10. And that would have been fine for people to look at this and see 1,000 milligrams on the front. Comparison shop on the files. I think it would be fine, Your Honor, because what's going on here is not a deception but a clarification. And under Williams and its progeny, it is perfectly fine and it's reasonable and a reasonable consumer expects to get more detail, to get clarification. What they don't expect is a contradiction. And we submit, Your Honor, that there is not a contradiction here. It's not like Williams v. Garber where you have a bunch of juicy fruits on the front and you don't have a single one of them in the ingredients. This is more like the Red v. Craft case that I believe it was Judge Wu down in the Central District where they were vegetable crackers and there were in fact vegetables in the ingredients. Just not as many vegetables as the plaintiff thought that there would be, but it was clarified. Or the Vigiano case that we cite in our papers. But I don't think that Walters is raising a claim here that there's false ingredients. I thought that it was about the consumer's ability to compare the cost of the number of items and what they're receiving, whether they're getting a 60-day supply of 1,000 milligrams or only a 30-day supply. That's a big difference to a consumer. Well, what's missing from this complaint, Your Honor, is any allegation that the consumer actually paid more for this product than they received. There's a complaint that says, I thought I was getting twice as much as I got. But what's missing from it, and there never has been any allegation, such allegation after two amended complaints, nor can there be. There's no allegation that they would have been able to purchase the product, you know, as much as they wanted for the same price that they got the right of a shopper. All the plaintiff needs to allege is that he would not have purchased the product but for the misleading label, let's say, for the unfair trade practices, I claim. And again, Your Honor, if you go back to Williams, whether you look at it under Williams or you look at it under FDA regulations or you look at it under Oregon contract law, unless there's a contradiction between the front of the panel and the back, unless it's something that, as a matter of law, can be said that a reasonable consumer would not expect, then you should affirm the district court. What the district court did, and by the way, Williams, as you know, was cited for the first time on reply. You've had your chance to respond. And we did. And we did. It wasn't in front of the district court, but the district court applied Oregon contract principles, which were what was before him. And under Oregon contract law, the Yegman case and others, what is required is for the court not to add what has been omitted or omit what has been added. That's Oregon revised statutes 42.230. And to look at everything in the overall context of the instrument. There's not a written instrument here, but there is certainly a written label with all of the things that FDA requires be on that label. And why haven't you argued preemption? I guess I don't understand that. We haven't argued preemption, Your Honor, because it was, I mean, the FDA violation, the alleged FDA violation that was brought up, wasn't brought up for quite a while in the district court proceedings. But then when it was, what they argued was, well, you violated FDA regs. We said, no, we didn't violate FDA regs. That's not a preemption issue. That's just we complied. Right. You say you complied. And I thought the regime said that the states were not permitted to add to or subtract from what the FDA regulations provided. And that's correct, Your Honor. I mean, I suppose we could have argued it as a preemption case, but I don't see complying with FDA regs when they're saying we're violating FDA regs. I mean, certainly in a state consumer protection case, you can argue this is unfair competition because you violated FDA regs. And we simply said, no, we haven't. I mean, there is a separate FDA reg that governs drugs that does demand exactly what they want you to do, but it just doesn't apply. I mean, that's quite right. And what that reg shows is if the FDA wanted to require what they want us to do, they knew full well how to do it. And they didn't, they don't, and they haven't done it for supplements. Supplements are governed under a different set of regulations, which are the regulations that apply here. That drug regulation applies to prescription and over-the-counter drugs. So, you know, I don't think that reg helps them. I think it actually supports our case. Well, yeah, no, that's why I'm puzzled that you haven't raised preemption. Well, I'm happy to raise it here if you're not going to be able to. And neither did the defendant in Williams, and that's an oddity of that case too. We have to take, we have to decide the case. You know, because I don't see it, Your Honor, the way this case was pled. It certainly wasn't pled as a preemption case originally. Or a case that would have triggered preemption. It's a defense. No, I understand that. But what they said was you are violating the FDA regulations. When the allegation is you're violating the regulation, the answer is no, we're not. You know, it's not like they're saying, you know, they are saying it would have been clearer if you did more than FDA required. But it's not that they were taking issue with something that FDA specifically required. It's not as if, you know, there's a reg on point that says thou shalt do this, we did that. And then they're coming back and complaining about our doing that very thing. What they're saying instead is this label, which we think complies correctly with FDA regulations, it does not comply. That's what they're saying. Can I just go back to the question about the number that you put on there? What's so magic about 1,000? Why do you need to put 1,000 on there in the first place? I think because 1,000 is the serving size, Your Honor, and 1,000 is, you know, who says that? Well, let's say you go to your doctor, and I'll use the example of vitamin D because it's a supplement that I take. Your doctor says you need to take 2,000 international units of vitamin D because you live in San Francisco and you don't get enough sun. Okay? So I'm going to the shelf and that's what I'm looking for. I'm looking for 2,000 I use. Okay? Same thing with calcium or any of these other supplements. Calcium is not that stupid, right? If you put 500 and their doctor told them to get 1,000, they know they've got to take 2, whereas if you do it the other way around, there is the potential for deception. All I can tell you is that it is industry practice to label these products as they're labeled. The purpose is not deception. The purpose is you want to give consumers the serving size they want, but you can't put it all in a horse pill. So just tell them that they're getting 500 per tablet, and then they'll know that they need to take 2,000. That's beyond the can of worms. And I'm not here to tell Your Honor that it couldn't be clearer. But the issue is not, in my mind at least, in my reading of the law, the issue is not sufficient clarity. The issue is deception and whether something is misleading. And I believe that under the Williams case, if you read Williams and you read the progeny of Williams, including this court's recent decision in Ebner v. Fresh, which we haven't cited, but that's the Chapstick case, the point is that reasonable consumers can and do expect to look at the back of these labels for clarification, for more detail, for exactly the things that Your Honor is suggesting could have been put on the front. Okay? Isn't that exactly what Williams held when the circuit denied hearing in Bonk? They went to the trouble of correcting and expressly saying that they wanted to make it clear, and I'm going to read from the quote, that we do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then relying on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception. Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the package. This is a state law claim, right? Breach of contract, the fraud, the Uniform Trade Practice Act. Looking back at the second amendment complaint, you said that the plaintiffs failed to allege that they had purchased it or had been, would have bought something else. On page 8 of the second amendment complaint, paragraph 29, Walters reasonably relied upon the information contained on the principal display panel that showed the quantity of product within the package when he made his purchase decision. Walters would not have purchased the accused VSI product if the actual amount of product per unit had been disclosed to him on the principal display panel. And they're not asking for money.  They want it fixed. Actually, I think they are asking for money as well. They are, Your Honor. No, it's attorney's fees, but not for money damages. That can be quite a bit of money after a while. But, Your Honor, in response to the quote that you just read me, I think the point of that quote is that reasonable consumers do expect to get more detailed information. And look, if you decide that what you're talking about is a conflict here between the front and the back, rather than the back providing more detailed information about what's on the front, then I lose. But if what we're talking about is the back providing clarification, providing more information in the place that FDA says you provide that additional information, the back's not taking away what's on the front. It is explaining what's on the front. I submit respectfully, Your Honor, Judge Navarro, that what is going on here is simply not the Williams situation where those ingredients were not in there at all, and you looked on the back and you looked in vain for them. Here, this product does deliver the thousand milligrams of calcium or whatever else it does. It just does it in two pills. It does it per serving. That's the issue. The Gerber's snacks, treats, whatever you want to call them, did have fruit. They had apple juice. So, it wasn't not a fruit. But here, Williams is specifically saying you can't use the FDA ingredient list as a shield. And that's what you're telling me. It was on the back on the FDA ingredient list. You didn't put it somewhere else on the back of the label. You're relying on the ingredient list. We're relying on the supplement facts, Your Honor, which is even more specific to serving size than an ingredient list. There's a big difference between an ingredient buried at the end of an ingredient list, white grape juice, in a serving size that every consumer knows. When you're taking a supplement, you're going to want to know, even if it's a thousand milligrams, you're going to want to know how much to take. And that's where you look for it. Counsel, you've exceeded your time. Thank you for your argument. We'll hear from Counsel to the Plaintiff, and we'll let him go over a little. If you need a little extra time, we'll accommodate you as well. Thank you, Your Honor. This label absolutely violates Section 105 A and C. They clearly say that they must declare the net quantity of contents on the principal display panel. They don't do it. They overstate it by a factor of two. That is an absolute violation. But it doesn't really matter if it violates the FDA or not. It's misleading, and that's what matters. There was no FDA violation in the Williams case about there's no requirement to show berries or not show berries on the front of that, but they chose to show berries in a misleading way. Here, they choose to represent so many tablets at so many milligrams. That's misleading, even if there wasn't a requirement to put those two things on there. They chose to do it, and when they did, they had to be honest about it, and they simply weren't. Williams, to me, the way I look at this is this. The court below said, look, we have a contract. You read the entire bottle front and back. The front says one thing. The back takes it away and changes it for you. The way I read Williams is this. It says, essentially, if the principal display panel and the supplement fact panel are consistent, that's fine. Then the whole thing is to contract. If the supplement fact panel is inconsistent, it essentially says to me that's not part of the whole contract. They're inconsistent. There's not a conflict between what's stated on the front and the back. In fact, they're totally consistent, right? No, I think they're totally inconsistent because it's telling you on the front you're getting so many milligrams. On the back, it says per two of these. Right, and that's accurate. No, the front says 60 at 1,000 milligrams. No, it doesn't say that. It says in a kind of, I don't know what to call it, but it's just sort of hovering out there, 1,000 milligrams. It's not connected directly to the statement of 60 tablets. So in that sense, I don't really see a direct conflict. I'm certainly with you that it could be misleading, especially if consumers are doing price comparison just looking at the front. But why is your opponent not right that it is reasonable to expect most consumers to, and that in fact most consumers do know that you need to flip the bottle over or around to see the additional information? I think what Williams and the law understands is the reality of this. You go into the store and you've got three or four different things with vitamins lined up. Well, that's 60 at 1,000, 60 at 1,000, 60 at 1,000. This was 22, that was 27, that was 28. You get the 22, got to go. That's how people shop, and I think that's what Williams understands the reality to be. My client is a medical doctor, an internal medicine doctor, and he goes to buy some of these for his mother-in-law. He goes in, does exactly that, picks it up, walks out with it, gets home when he was going to decide what he's going to give his mother-in-law. Then he sees on the back and calls me up and says, this is a problem. So, I mean, that's the typical consumer activity with this. And I think that's why it says you have to show the net quantity of contents on the front. And you just do the multiplication, that should be the net quantity of contents. They could have put nothing there and been okay. Or they could have put for two servings, as your Honor saw. But I think once you undertake to put something, it's misleading or likely to mislead the reasonable consumer. And Oregon is a reasonable consumer test, as is California, the Pearson versus Philip Morris 358 OR 88 case. Book Note 26 says that. Okay. That's all I have. Oh, I was going to say, and this was a motion to dismiss, not a motion to submit. It was a motion to dismiss with no leave to amend. It was a motion to dismiss that was granted with no leave to amend. Okay. Thank you very much. The case just argued will be submitted.
judges: Watford, Owens, Navarro